**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **MARCUS ANTHONY LEVERETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:23-cv-400-CWB** |
| | ) | |
| **MARTIN O'MALLEY,**[1] | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

## I. Introduction and Administrative Proceedings

Marcus Anthony Leverett ("Plaintiff") filed both an application for Disability Insurance Benefits under Title II of the Social Security Act and an application for Supplemental Security Income under Title XVI of the Social Security Act on February 18, 2020—initially alleging disability onset as of January 15, 2018 but later amending to January 1, 2020—due to eye/vision problems, hip/leg pain, diabetes, and high blood pressure. (Tr. 11, 42, 61-62, 77-78, 92-93, 95-96, 112-15).[2] Plaintiff's claims were denied at the initial level on January 14, 2021, and again after reconsideration on August 20, 2021. (Tr. 10, 94, 112-13, 131). Plaintiff then requested *de novo* review by an administrative law judge ("ALJ"). (Tr. 10, 133). The ALJ subsequently heard the case on June 22, 2022, at which time testimony was given by Plaintiff (Tr. 36, 44-56) and by a vocational expert (Tr. 56-59). The ALJ took the matter under advisement and issued a written decision on December 14, 2022 finding that Plaintiff was not disabled prior to

---

1 Martin O'Malley became Commissioner for the Social Security Administration on December 20, 2023 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

2 References to pages in the transcript are denoted by the abbreviation "Tr."

December 30, 2020 but further finding that Plaintiff did become disabled on that date and continued to be disabled through the date of the decision. (Tr. 10-24).

The ALJ's written decision contained the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2035.

2. The claimant has not engaged in substantial gainful activity since January 15, 2018, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. Since the amended alleged onset date of disability, January 1, 2020, the claimant has had the following severe impairments: hypertension, type II diabetes mellitus, and obesity. Beginning on the established onset date of disability, December 30, 2020, the claimant has had the following severe impairments: hypertension, type II diabetes mellitus, obesity, history of advanced diabetic retinopathy, retinal detachment, cataracts, and statutory blindness (20 CFR 404.1520(c) and 416.920(c)).

4. Prior to December 30, 2020, the date the claimant became disabled, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that prior to December 30, 2020, the date the claimant became disabled, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: occasionally lift/carry up to 50 pounds and frequently lift/carry up to 25 pounds; frequently climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally [sic] exposure to extreme cold and extreme heat; occasional to vibration; never work around unprotected heights or hazardous moving mechanical parts; limited to oral instructions; near and far acuity are not present, and depth perception and accommodation would not be present.

6. Prior to December 30, 2020, the claimant was capable of performing past relevant work as a disc jockey, [DOT#159.147-014], sedentary, SVP 5. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. Since December 30, 2020, the severity of the claimant's impairments has met the definition of Statutory Blindness and the criteria of section 2.03A of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d) and 416.925).

> 8. The claimant was not disabled prior to December 30, 2020, (20 CFR 404.1520(f) and 416.920(f)) but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(d) and 416.920(d)).

(Tr. 13, 14, 15, 21, 22, 24). On April 21, 2023, the Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner. *See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now asks the court to remand the case for a new hearing and further consideration. (Doc. 5 at p. 12). The court construes Plaintiff's supporting brief (Doc. 5) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 6) as a competing motion for summary judgment. As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full civil jurisdiction by a United States Magistrate Judge (Docs. 7, 8), and the undersigned finds that the case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.

## II. Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one. Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a

reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted). The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Reversal is not warranted simply because the court itself would have reached a different result. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] To make such a determination, the ALJ employs a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520 & 416.920.

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment severe?
>
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>
> (4) Is the person unable to perform his or her former occupation?

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

>  (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id*. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids

---

[4]   *McDaniel* is an SSI case arising under Title XVI. Nonetheless, because the same sequence applies to claims for disability insurance benefits brought under Title II, SSI cases are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1240.

**III.  Issue on Appeal**

Plaintiff raises one issue on appeal—arguing that the ALJ erred in not finding the impairments of diabetic retinopathy, vision loss, retinal detachment, and cataracts to be severe impairments prior to December 30, 2020. (Doc. 5 at p. 2). The Commissioner contends that substantial evidence supported the ALJ's RFC determination and that Plaintiff failed to prove that he was disabled prior to December 30, 2020. (Doc. 6 at p. 1).

**IV.  Discussion**

Plaintiff asserts that the medical evidence of record, as summarized in the ALJ's decision, supports a finding that his diabetic retinopathy, vision loss, retinal detachment, and cataracts were severe impairments prior to December 30, 2020. (Doc. 5 at p. 11). In response, the Commissioner contends that the ALJ was not required to identify every severe impairment at step two of the sequential evaluation process and that the ALJ properly considered the relevant medical and other evidence in assessing Plaintiff's RFC prior to December 30, 2020. (Doc. 6 at pp. 7-8).

"[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source. [The Agency] will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. An impairment or combination of impairments is "severe" if it

"significantly limits [the plaintiff's] physical or mental ability to do basic work activities"[5] and persists for at least twelve consecutive months. 20 C.F.R. §§ 404.1520(c), 416.920(c), 404.1505(a), and 416.905(a). "[T]he mere diagnosis of [a condition] says nothing about the severity of the condition." *Crans v. Berryhill*, No. 3:16-CV-914, 2017 WL 4683933 at *5 (M.D. Ala. Oct. 18, 2017) (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)). "[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). Plaintiff bears the burden of proving that an impairment is severe. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

"Step two is a threshold inquiry," *McDaniel*, 800 F.2d at 1031, which acts as a "filter" to eliminate claims involving no substantial impairment, *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). "If the ALJ finds a claimant does not have a 'severe' impairment or combination of impairments, she should conclude the claimant does not have a disability." *Vangile v. Comm'r, Soc. Sec. Admin.*, 695 F. App'x 510, 513 (11th Cir. 2017). In the Eleventh Circuit, "the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Id*. When an ALJ recognizes at least one severe impairment, the ALJ is not required to identify additional impairments at step two if the decision

[5] Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 CFR §§ 404.1522(b), 416.922(b).

demonstrates that the ALJ properly considered all impairments at subsequent steps. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014).

At the fourth step of the sequential evaluation process, an ALJ must consider all medically determinable impairments, not just the "severe" impairments identified at step two. *Id.*; 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). The ALJ's responsibility is met when she considers all medical evidence in the record by referencing the claimant's "combination of impairments" at step three and stating that she considered "all symptoms" in assessing the RFC. *Tuggerson-Brown*, 572 F. App'x at 951-52. Importantly, the "mere existence" of an impairment does not reveal its effect on a claimant's ability to work or undermine RFC findings. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

At step two in this case, the ALJ satisfied the requirements of the threshold inquiry by finding that on January 1, 2020 Plaintiff had severe impairments—namely hypertension, type II diabetes mellitus, and obesity. (Tr. 14); *see Jamison*, 814 F.2d at 588 ("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."). Because the ALJ found that Plaintiff had at least one severe impairment prior to December 30, 2020, the ALJ was not required to identify all of Plaintiff's severe impairments before moving to step three of the sequential evaluation process. *See Tuggerson-Brown*, 572 F. App'x at 951-52; *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. A'ppx 890, 892 (11th Cir. 2013) ("[S]ince the ALJ proceeded beyond step two, any error in failing to find that [the claimant] suffers from the additional severe impairments of degenerative joint disease of the right knee or varicose veins would be rendered harmless."); *Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) (although the ALJ erred in finding that plaintiff's mental

impairments were not severe, such error was harmless because the ALJ found other severe impairments at step two and considered the mental impairments at later steps).

Although the ALJ did not err at step two, the court must still review whether or not the ALJ considered all of Plaintiff's impairments, regardless of severity, in performing the next steps of the sequential evaluation process. "[A]s long as the ALJ considered Plaintiff's severe impairments in combination with Plaintiff's non-severe impairments – including [his] alleged mental impairments – any potential error is harmless." *Branco v. Comm'r of Soc. Sec.*, No. 2:18-CV-633, 2020 WL 1329981 at *6 (M.D. Fla. Mar. 23, 2020) (citing *Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 842 (11th Cir. 2014)).  Here, the ALJ found that prior to December 30, 2020, Plaintiff "did not have an impairment or combination of impairments that [met] or medically equal[ed] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 15).  Additionally, in determining Plaintiff's RFC, the ALJ considered the "entire record" and "all symptoms and the extent to which these symptoms c[ould] reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p," and the ALJ "also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." (Tr. 15).  These statements sufficiently demonstrate that the ALJ considered all of the necessary evidence. *See Tuggerson-Brown*, 572 F. App'x at 951-52.

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) ("Your residual functional capacity is the most you can still do despite your

limitations."). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion. The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036 at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646 at *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted). "It is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citation omitted).

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted). Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed. *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211

(11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted). Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532 at *4 (S.D. Ala. Mar. 9, 2022).

In assessing Plaintiff's RFC, the ALJ noted that Plaintiff had not been seen by a physician in 15 years as of January 23, 2020 and that, although Plaintiff was diagnosed with hypertension and diabetes with reports of vision issues, he had received "no diagnoses for those vision issues." (Tr. 14, 269-70). Plaintiff cites to his hearing testimony as establishing his vision problems and worsening vision throughout 2020. (Doc. 5 at pp. 5-6). The ALJ expressly considered Plaintiff's subjective complaints in determining his RFC, summarizing Plaintiff's testimony as follows:

> At the hearing, the claimant testified that in early 2020, he woke with a blood spot on his eye, and could not even see light due to complications due to diabetes. He acclimated around the home because he could not go to the physician. He was caring for his disabled mother and had no funds to see the physician. He couldn't drive. He had a haze over one eye and couldn't see light from another. He went to a physician in January of 2020 for an examination and was told that his diabetes needed to be in control to help his eyes. He had no income to do more, his friend would help him by leading him around, but his eyes were getting worse. By June he could no longer wait, he just had to deal with it despite the cost, and he alleges that he was told that he can't see anything and nothing can be done due to the maturity of the cataracts and that they are getting worse. He indicated that the blood was worsening in the eye between January and June, to the extent that he couldn't function. So, this was the end of February and early March.
>
> . . .
>
> At the hearing, the claimant testified that the August 17, 2020, right eye surgery is when the left eye was the lesser of two, but they were both still not in good shape. He said that the physicians were attempting to save the left eye, rebuild with lens, and with retinal surgery. The gas took two weeks to dissipate, with six trips to Birmingham getting ready for the next one. There were 72 hours, 10-12 trips between two surgeries. He testified that they then scheduled the second one to fix

>   the retina in that eye and he had comprehensive after care with trips for care, with no less than 10 injections in eyes. They were still leaking, with continued eye problems. The physicians then watched closely, and he came back in two or three weeks off and on for eight months in between that and he also had to see a Medicaid doctor. He said that he was taking shots because he still could not see or drive, and he had spots on his eyes, and cataracts in left eye. He said he had to have a friend take care of him that whole time.

(Tr. 15-16, 17, 45-52).

The ALJ explained that "[a]fter careful consideration of the evidence" Plaintiff's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms," but that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of [his] symptoms [were] not fully supported prior to December 30, 2020." (Tr. 18). In considering Plaintiff's subjective statements regarding his vision problems in conjunction with the record as a whole when fashioning Plaintiff's RFC, the ALJ found that "he could never climb ladders, ropes or scaffolds due to his vision issues and body habitus." (Tr. 20). The ALJ added that Plaintiff "was limited to oral instructions and that near and far acuity [were] not present, and depth perception and accommodation would not be present." (Tr. 20). The ALJ explained, "I simply considered [Plaintiff's] total conditions and gave him the benefit of the doubt." (Tr. 20). Plaintiff fails to allege or identify any additional limitations that the ALJ should have included in the RFC based upon his vision impairments.

Moreover, a review of the record reflects that the ALJ thoroughly considered the medical record as a whole in assessing Plaintiff's vision impairments when fashioning Plaintiff's RFC. The ALJ cited treating records from June 2020 that showed that Plaintiff had "loss of vision OS (left eye), vitreous hemorrhage, and traction retinal detachment OS greater than OD (right eye)." (Tr. 16, 275). Notes from June 2020 indicated that Plaintiff had stable vision in the right eye but worsened vision in the left eye, and examination revealed that his visual acuity of his right eye was

20/60 cc and visual acuity of his left eye was "count fingers at 1 ft." (Tr. 16, 275, 278). Plaintiff was diagnosed with left vitreous hemorrhage and traction retinal detachment, dense vitreous hemorrhage with poor view of the retina, right early traction retinal detachment approaching fovea,[6] severe proliferative diabetic retinopathy of both eyes, and posterior subcapsular cataract (PSC) of the left eye and cataracts of both eyes. (Tr. 16, 279).

The ALJ noted that records from July 27, 2020 showed that Plaintiff was seen for loss of vision that was worse in the left eye than in the right. (Tr. 16, 369). The ALJ also noted that Plaintiff reported that he could no longer read for four months in the right eye and eight months in the left, that he was sensitive to light and glare, and that he had floaters. (Tr. 16, 369). Fundus examination showed "no view" for the left eye and that the right eye had abnormal optic nerve (NVD), macula (hemorrhages), vessels (fibrovascular elements along the inferior temporal arcade and the superior temporal arcade), and vitreous (old and new hemorrhage mainly inferiorly). (Tr. 16, 371). Plaintiff's ultrasound revealed moderate to marked vitreous opacity greatest inferiorly with inferior tractional retinal detachment of his left eye. (Tr. 16-17, 372). The ALJ commented that the July records showed that Plaintiff had cortical cataracts of both eyes, proliferative diabetic retinopathy, traction retinal detachment of the left eye, vitreous hemorrhage of both eyes, and that his right eye visual acuity was 20/200 and his left eye visual acuity was hand motions. (Tr. 17, 372).

The ALJ noted that August 17, 2020 records revealed that Plaintiff had surgery for his right eye, which involved a cataract extraction with insertion of intraocular lens, along with a 25-guage pars plana vitrectomy, traction retinal detachment repair, endolaser panretinal photocoagulation,

---

[6]   Fovea is the "depression in the very center of the macula where eyesight is sharpest." https://www.aao.org/eye-health/anatomy/fovea (last viewed February 14, 2024).

fluid-air exchange, and intravitreal Avastin. (Tr. 17, 400-01). The ALJ also noted that on September 17, 2020, upon follow up from surgery, medical records showed that Plaintiff was doing well with minor pain and aching and some reports of flashes of light and floaters and that his left eye was reported as stable. (Tr. 17, 380). Tests showed that Plaintiff's right eye distance and intermediate vision was 20/60 -1. (Tr. 17, 382). The ALJ noted that optical coherence tomography ("OCT") revealed subretinal fluid of the right eye but that the eye was improved from the preoperative status. (Tr. 17, 384).

On September 17, 2020, Plaintiff had surgery on his left eye for proliferative diabetic retinopathy with vitreous hemorrhage and tractional retinal detachment and visually significant cataract. (Tr. 17, 387). On the same day of his left eye procedure, in postoperative notes, Plaintiff indicated that his vision was "better than it has been in 8 months," though it was still hand motion ("HM"). (Tr. 17, 459). The ALJ noted that records from November 3, 2020 showed that Plaintiff's distance and intermediate vision, uncorrected, was 20/40 in the right eye and 20/25 in the left eye. (Tr. 18, 433). Treating notes indicated that Plaintiff was "[d]oing excellent" with his visual acuity 20/25 from HM on the left and 20/40 from 20/200 on the right. (Tr. 18, 436). The ALJ cited December 8, 2020 records that showed on follow up examination that Plaintiff's distance visual acuity was 20/30 -2 in both eyes, that confrontational fields were full to finger counting in both eyes, and posterior chamber intraocular lens ("PCIOL") was in good position for both eyes. (Tr. 18, 425-26). The ALJ noted that treatment notes indicated that Plaintiff was "doing excellent" with visual acuity of 20/30 from HM, superior portion of optic anteriorly rotated on the left, with air fill gone, and mild worsening of intra-retinal fluid ("IRF") but would monitor as vision was "still great." (Tr. 18, 427-28). The ALJ further noted that Plaintiff's right eye had subretinal fluid but was improved from preoperative status and stable. (Tr. 18, 428).

The ALJ additionally considered the December 15, 2020 consultative examination with Dr. Ammar Aldaher, which showed that Plaintiff's visual acuity without glasses was 20/100 in the right eye and 20/200 in the left. (Tr. 18, 412). Dr. Aldaher noted that Plaintiff could not identify colors and diagnosed Plaintiff with retinopathy with vision loss, hypertension, and diabetes. (Tr. 18, 412-13). Dr. Aldahar opined that Plaintiff could do work related activities such as sitting, standing, walking, lifting, carrying, and handling objects. (Tr. 18, 413).

The ALJ next discussed the December 30, 2020 consultative examination by Dr. Douglas Clark, who found that Plaintiff's best corrected vision was 20/200 in the right eye and that in his left eye he only had HM, meaning "the ability to distinguish whether or not there is movement of the examiner's hand directly in front of the patient's eyes." (Tr. 18, 480). The ALJ noted that tension was 20 for both eyes and that fundus examination showed severe diabetic retinopathy, laser scarring, tractional retinal detachment scarring, and hemorrhages. (Tr. 18, 481). The ALJ further observed:

> As Dr. Clark noted on the consultative examination report, the claimant's vision without glasses on the right was 20/200- and with best correction 20/200+ for distance, 20/800 without glasses for reading or close work, and with best correction 20/400 (Exhibit 10F). The left eye was only measured at HM, which means hand motion, or the ability to distinguish whether or not there is movement of the examiner's hand directly in front of the patient's eyes. Thus, the better eye, the right eye, was 20/200 as required for statutory blindness[7] under 2.02, and even 20/400 with best correction for close work or reading.

(Tr. 18, 480-81).

---

[7] The regulations define statutory blindness as follows:

> [C]entral visual acuity of 20/200 or less in the better eye with the use of a correcting lens. An eye which has a limitation in the field of vision so that the widest diameter of the visual field subtends an angle no greater than 20 degrees is considered to have a central visual acuity of 20/200 or less.

20 C.F.R. §§ 404.1581, 416.981.

The ALJ also considered the prior administrative medical finding of State agency medical consultant Gary Spitz, M.D., who reviewed the evidence of record in January 2021. (Tr. 20-21, 106-07). Finding Dr. Spitz's opinion persuasive, the ALJ stated:

> Dr. Spitz explains it best (Exhibit 5A/13-14). His special senses review notes that the claimant alleges a visual impairment, among other conditions. Alleged onset date was 01/15/2018 while established onset date is 12/30/2020. DDS found listing 2.03A was met. Medical evidence in the file shows that the claimant has diabetic retinopathy. Medical evidence in the file shows that the claimant is status post laser photocoagulation for diabetic retinopathy. A consultative examination on December 30, 2020, with Dr. Clark shows best corrected visual acuity 20/200+ OD HM OS. The visual acuity reported is consistent with the pathology described. The visual fields performed are Humphrey 24-2 and acceptable for adjudication. The reliability indices shown thereon, specifically fixation losses, false positives, and false negatives, are indicative of good reliability per Dr. Spitz. The fields subtend less than 20 degrees around the point of fixation in each eye. Listing 2.03A is met and the claimant is statutorily blind. However, as to onset, Dr. Spitz notes that the medical examination on November 3, 2020, shows acuity 20/40 OD 20/25 OS. Thus, the onset established by DDS is reasonable, and based on current severity, medical evidence in the file, as well as the natural history of the underlying disease process. Extant medical evidence does not support an earlier onset per Dr. Spitz. He notes that that diabetic retinopathy is a progressive and not a static disease. In fact, diabetic retinopathy, and its associated visual loss, can progress very rapidly. Thus, it is not reasonable to infer that the current severity of claimant's visual loss accurately reflects claimant's ocular status earlier in 2020. Rather it would be reasonable to infer that claimant's visual acuity and fields were considerably better at that time. Indeed, the treating source medical examination heretofore cited shows that to be the situation herein.

(Tr. 20-21, 106).

The ALJ stated that "[t]here was no evidence of statutory blindness or meeting/equaling any listing under 2.00 prior to [December 30, 2020]." (Tr. 18). The ALJ concluded:

> In sum, notwithstanding his allegations of pain, discomfort and physical limitations, treatment records and examinations do not provide evidence that would reasonably support a finding that the claimant is as physically limited as alleged, or, for that matter, that he experiences the severity of symptoms as alleged prior to the established onset date.
>
> . . .
>
> Prior to the established onset date, in addition to the limitations already discussed, I find that the claimant was limited to oral instructions, near and far acuity were not present, and depth perception and accommodation were not be present. This takes

> his testimony and the overall record into consideration. There is no further evidence justifying restrictions greater than what is set forth in the residual functional capacity finding above.

(Tr. 21).

Here, the ALJ's finding of hypertension, type II diabetes mellitus, and obesity as severe impairments prior to December 30, 2020 was enough to satisfy the requirement of step two. *Jamison*, 814 F.2d at 588. The ALJ's decision includes a thorough discussion of Plaintiff's alleged impairments, including Plaintiff's diabetic retinopathy, vision loss, retinal detachment, and cataracts. The ALJ's decision reflects that the ALJ properly considered all of Plaintiff's impairments, whether severe or not, when considering the evidence of record. Accordingly, based upon the entire record, the court concludes that the ALJ did not err when describing Plaintiff's alleged impairments at step two and that the ALJ adequately considered Plaintiff's diabetic retinopathy, vision loss, retinal detachment, and cataracts in formulating Plaintiff's RFC prior to December 30, 2020. The court finds that the ALJ's decision is supported by substantial evidence.

## V. Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 5) is due to be **DENIED**;
- that the Commissioner's motion for summary judgment (Doc. 6) is due to be **GRANTED**; and
- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 16th day of February 2024.

**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**